## SOUTHERN PAC. CO. v. ULMER et ux.* (No. 1847.)

(Court of Civil Appeals of Texas. El Paso. March 4, 1926. Rehearing Denied March 25, 1926.)

1. **Trial** ⬤⇒252(20) — **Special charge that, if ejected passenger's relapse into tubercular condition, because of exposure, could have been caused by other conditions than those alleged, jury should find for carrier, held properly refused, as submitting no special defensive matter other than facts pleaded in petition and unsupported by evidence.**

In action against carrier for ejection of passenger from train, defendant's special charge that, if passenger's relapse into tubercular condition by reason of exposure could have been caused by other conditions than those alleged, jury should find for defendant, *held* properly refused as submitting no special matter of defense apart from facts pleaded in petition, and not supported by evidence if it did.

2. **Carriers** ⬤⇒383—**Evidence held to justify submission to jury of issue as to conductor's negligence in failing to notify crew of other train to stop for passenger, ejected because on wrong train.**

In action for damages for ejection of passenger, who was on wrong train, evidence *held* sufficient to justify submission to jury of issue as to conductor's negligence in failing to notify crew of other train to stop for plaintiff.

3. **Evidence** ⬤⇒75—**Silence of party, within whose power and interest it is to disprove fact, which opposing party's proof tends to establish, strengthens probative force of such proof, and is of certain probative force.**

When proof tends to establish a fact and discloses that it is within power and interest of opposing party to disprove it, latter's silence not only strengthens probative force of affirmative proof, but is itself of certain probative force.

4. **Carriers** ⬤⇒384(2)—**Instruction that, if passenger voluntarily left train, verdict should be for railroad, was properly refused, where other grounds of negligence were assigned as causing injuries, and conductor assured passenger that another train would stop for her.**

In action for ejection of passenger, who was on wrong train, special instruction that, if passenger voluntarily left train, verdict should be for defendant, was properly refused, where other grounds of negligence were assigned as causing injuries, and conductor assured passenger that other train, to which she was directed, would stop for her.

5. **Carriers** ⬤⇒383—**Passenger, suing for ejection, resulting in relapse into tubercular condition, held not without cause of action as matter of law because of failure to inform conductor that she had been affected with tuberculosis or absence of irresistible force by him.**

Passenger, suing for ejection from train, causing relapse into tubercular condition by reason of exposure, cannot be said, as matter of law, to have no cause of action, unless she informed conductor that she had been affected with tuberculosis, where she told him that her health was such that she could not leave train at such point, nor was it necessary to right of recovery that conductor compelled her to get off train by use of irresistible force.

6. **Carriers** ⬤⇒362—**Ejection of passenger from train may occur without use of physical force.**

Ejection of passenger from train may occur without use of physical force, as where passenger is informed that she must leave train at designated time and place.

7. **Carriers** ⬤⇒382(7)—**$15,000 for mental anguish and relapse into active tubercular condition because of exposure after ejection from train held not so excessive as to justify reduction.**

Verdict of $15,000 for passenger, suffering mental anguish and relapse into active tubercular condition as result of exposure after wrongful ejection from train, *held* not so excessive as to justify reduction.

On Motion for Rehearing.

8. **Judgment** ⬤⇒235—**Judgment for wife alone, in suit by husband and wife jointly, for personal injuries to her, is final, being against husband by necessary implication (Rev. St. 1925, arts. 1983, 4615).**

That judgment in suit by husband and wife jointly for personal injuries to her was rendered in her favor, without making any disposition of husband, did not render it unenforceable under Rev. St. 1925, arts. 1983, 4615, as not being final; judgment being against husband by necessary implication, where subject-matter, which was wife's separate property, is adjudged to her.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by N. A. Ulmer and his wife, Patsy Ulmer, against the Southern Pacific Company and others. From judgment for the wife against named defendant, it appeals. Affirmed.

Del W. Harrington, of El Paso (Harry H. McElroy, of El Paso, of counsel), for appellant.

Jones, Hardie & Grambling, of El Paso, for appellees.

WALTHALL, J. N. A. Ulmer and wife, Patsy Ulmer, brought this suit against the Southern Pacific Company, the Galveston, Harrisburg & San Antonio Railroad Company, and El Paso Union Passenger Depot Company, to recover damages for personal injuries alleged to have been sustained by Patsy Ulmer, on account of alleged negligence proximately causing her injuries complained of. The Galveston, Harrisburg & San Antonio Railroad Company and the El Paso Union Passenger Depot Company were dismissed from the suit, and we will make no further reference to them. The record pre-

sents an appeal by the Southern Pacific Company from a judgment against it in favor of Mrs. Patsy Ulmer.

The petition alleges that on the 13th day of March, 1925, Mrs. Patsy Ulmer purchased a ticket at the Union Depot in El Paso, Texas, which ticket by its terms entitled her to be carried as a passenger over the lines of the Southern Pacific Company to Globe, Ariz.; that about 2 o'clock of the same day she presented said ticket to the gateman at the gate through which passengers are admitted to the railroad yards of the defendant company, who examined her ticket and directed her to a train then standing on the railroad tracks in said yards, and advised her that the train pointed out was the train for her to take under said ticket; that she proceeded to said train, exhibited her ticket to the employee of the company, who, after examining said ticket, directed her to enter said train, which she did, with her son, accompanying her, of the age of 2 years and 10 months; that she remained on said train as a passenger until the train had proceeded westward some 8 miles, when the train conductor approached her and asked for her ticket; that upon examining her ticket the train conductor informed her that she was on the wrong train, caused the train to come to a standstill and compelled her to get off the train at that point; that, in announcing that she was on the wrong train, and that he would have to put her off, he spoke to her in a loud and gruff tone of voice; that she stated to the conductor that she was not well, and was not able to get out in the sandstorm then blowing, and requested to be allowed to remain on said train until she should reach Tucson, or until the train should reach some town where she could with comfort wait until the train for Globe should arrive, and offered to pay her fare to Tucson or other convenient station, but that the conductor wrongfully refused to accept her fare and refused to allow her to remain on the train as requested, and that she and her son, with her suit case, were then, over her protest, put off the train on the ground, at a place where there was no station, or other stopping place, and directed her to walk over to another line of railroad operated by the Southern Pacific Company and to then wait for the next passenger train going west, and told her that said train would stop, take her on as a passenger, and carry her on to Globe.

The petition alleged that she followed the instructions of the train conductor in going over to the other line, a distance of about 1,000 feet away, and there waited at the point designated by the conductor, and there attempted to flag said other passenger train, but that said train did not stop and take her on. She alleged that said conductor had failed to notify said other train to stop and take her upon said other train, though he had ample time to have done so, and that,

had he done so, said other train would have been bound to and would have stopped and taken her on, and that said conductor well knew that, if he did not notify said other train to stop at said point for her, said train would not stop, and that she would be left out upon the plains without protection or place to stop for the night.

The petition alleged in detail the condition of the place at which she was left, that she suffered mental anguish, and anxiety, and from cold wind and sandstorm, and that by reason thereof she suffered a relapse in her health, from that of a previously cured or arrested tubercular condition to that of an active tubercular condition, in which latter condition she had remained ever since, and alleged that, by reason thereof, her health was destroyed, and that she has suffered the damages for which she sues.

The Southern Pacific Company answered by general demurrer and special exceptions, general denial, and special answer, in effect, a denial that any act of negligence on its part was the proximate cause of any injury to Mrs. Patsy Ulmer complained of, but that, if she suffered a relapse in health, it was brought about by exposure and circumstances for which it was not responsible, and due to causes and conditions other than to any negligence of the railroad company.

The case was tried with the aid of a jury and submitted upon the general issue. The jury found in favor of Mrs. Patsy Ulmer and assessed her damages at $15,000, and upon the jury's verdict judgment was rendered in favor of Mrs. Patsy Ulmer, and against the Southern Pacific Company in said amount, with interest from the date of the judgment, with all costs of suit except those adjudged against Ulmer and wife, and directed that execution issue in favor of Patsy Ulmer against the Southern Pacific Company, from which judgment this appeal is duly prosecuted.

## Opinion.

Appellant, Southern Pacific Company, suggests that the verdict having been returned in favor of Patsy Ulmer and the judgment having been rendered in favor of Mrs. Patsy Ulmer, without any mention or disposition being made of the husband, N. A. Ulmer, though charged with the costs of dismissing the two other companies out of the suit, the judgment was not enforceable against appellant, and refers us to articles 4615 and 1983, R. S., and several cases, among them, Barmore v. Darragh (Tex. Civ. App.) 227 S. W. 522; Tannehill v. Tannehill (Tex. Civ. App.) 171 S. W. 1050; Vaughn v. Railway (Tex. Civ. App.) 79 S. W. 345, 35 Tex. Civ. App. 445; Tex. & Pac. Ry. Co. v. Bailey, 18 S. W. 481, 83 Tex. 19; East Tex. Fire Ins. Co. v. J. M. Coffee, 61 Tex. 287; Mignon v. Brinson et al., 11 S. W. 903, 74 Tex. 18; Linn v. Arambould, 55 Tex. 625.

The point sought to be made is to the effect that, the judgment not being specifically in favor of both the husband and wife, nor denying the husband recovery, and not having made any disposition of the husband, he being a necessary party to the suit and,charged with some of the costs, the judgment is not a final judgment.

[1] We think the point suggested is not well taken. It was not error to refuse to submit to the jury appellant's special charge instructing the jury that, if the jury should find Mrs. Patsy Ulmer had relapsed into a tubercular condition, "and that such relapse could have been caused by other conditions, circumstances, and exposures than those alleged," to find for the defendant on the issue of her alleged relapse.

The answer of appellant company, referred to in its brief, and pleaded as a special answer, to which it is insisted the special charge was directed, was in the words of the special charge submitted and refused. In legal effect the answer was no more than a general denial, and put in issue only the facts included within the allegations of the petition. But, if it could be considered as submitting any special matter of defense apart from the facts pleaded in the petition, we have found no evidence in the record which could be considered as special defensive matter, and certainly the special charge points out none.

[2] After alleging that the train conductor on the train on which Patsy Ulmer had taken passage had compelled her to leave the train, and directed her to walk over to another line of railroad operated by the Southern Pacific Company, and to there wait for the next passenger train on that line going west, the petition alleged that the conductor told her that "said train would stop and take her on as a passenger, and that said train would carry her on toward uer destination, and that she could reach Globe, Ariz., over said train, and that said train would stop for her at the point which he directed her to go." After alleging that she followed the instructions of the conductor in going over to the other line of the railroad and waited there at the point designated and remained there until the train referred to approached, she alleges:

"She proceeded to attempt to flag said train and cause said train to stop, but said train did not stop, but proceeded on to the west, and said conductor had wholly failed to notify said train crew, and, if said train crew had been notified, they would have been bound to and would have stopped said train, and taken said plaintiff and her child and baggage on said train, and said conductor well knew that, if he did not notify said train crew to stop the train at said point for said passenger, the train would not stop."

In submitting the above as ground of negligence, the court charged the jury as follows:

"If you find from a preponderance of the evidence that defendant's conductor failed to notify the crew of defendant's other train to stop for plaintiff, and that, under all the facts and circumstances in evidence, the defendant's said conductor was guilty of negligence in failing to notify the crew of the later train on the other track to stop and take plaintiff upon said train, if he did so fail, and such negligence, if any, was the proximate cause of any of the injuries complained of in plaintiff's petition, then your verdict will be for the plaintiff."

Appellant objected to the above charge, on the ground that there was no evidence that the conductor failed to notify the other train crew, and no evidence that, if the other train crew had been notified, it would have stopped for plaintiff, and no evidence that plaintiff suffered any injury by reason of the failure to stop the later train and take plaintiff on.

The appellant's train conductor testified that he told Mrs. Ulmer that she could—

"go across and flag No. 109, which will be along in about an hour. * * * At that time I thought that was a flag stop for 109, but it was not, according to the train card. * * * Nobody ever told me that was a flag stop. I thought it was a flag stop because naturally those local points are all flag stops. As a general rule all those little places are all flag stops. I had no definite information about it. * * * I knew about 110 being a local train and stopping at flag stations, and that is why I supposed 109 did. I did not have time to look at the card. I presumed it was a flag station for 109. I did not take time to see if it was a flag station, because I had other duties to perform. I did have a time card to show that. It was in my pocket. * * * I admit I made a mistake by not looking to see if it was a flag station."

The train brakeman testified:

"I thought that was a flag station for that train coming, because 109 does local work. I had a time-table showing whether it was or not, but I did not look at that. That would have shown it was not."

[3] The evidence is undisputed that the train did not stop. We think the evidence, though circumstantial, is sufficient to justify the court in submitting to the jury the issues of fact embraced in the charge. While the burden of proof is on the appellee, the rule is well established that, when the proof tends to establish a fact, and at the same time discloses that it is within the power and the interest of the opposing party to disprove it, it follows that the silence of the opposing party, not only strengthens the probative force of the affirmative proof but of itself is clothed with a certain probative force. Pullman Co. v. Nelson, 54 S. W. 624, 22 Tex. Civ. App. 223. Here there was no opposing evidence, though the facts submitted were well within the knowledge of appellant's conductor.

[4] The court was not in error in refusing

to submit appellant's special instruction to the effect that, if the jury should find that plaintiff voluntarily left the train at the place alleged in the petition, to return their verdict for the appellant company, for the reason that other grounds of negligence were assigned as causing the injuries, and further, if plaintiff voluntarily left the train, as submitted in the charge, she may have done so with the assurance of the train conductor that the other train to which she was directed would stop and pick her up on being flagged.

[5] Appellee testified that, when the conductor informed her that she was on the wrong train and she would have to get off at that place, she then told the conductor she did not want to get off there, that her health would not permit her to get off there. The conductor testified that plaintiff said nothing as to her health as a reason for not wanting to get off there. Plaintiff alleged that she had previously suffered with tuberculosis, which had been cured or arrested, and that the exposure in being put off the train and remaining there as she did caused the tuberculosis to again become active. Appellant complains of the refusal of the court to instruct the jury, as requested, that, unless the jury should find that plaintiff informed the conductor that she had been affected with tuberculosis, and unless the jury should further find that the conductor compelled her to get off the train at the time and place alleged, over her objection and protest, the jury could not find for plaintiff on the issue of her having suffered a relapse and the tubercular condition again becoming active. The court was not in error, we think, in refusing to give the charge. What we have said in considering a previous point applies, in part, to this.

[6] While it might be admitted plaintiff was on the wrong train, there is no doubt, we think, under the facts disclosed by the record, but that she was a passenger, and not a trespasser or a licensee, on the train at the time and place she alighted therefrom. It is in evidence, though not uncontradicted, that plaintiff told the conductor, in effect, that the condition of her health was such that she could not leave the train at that point. We think it cannot be held as a matter of law, as indicated in the requested charge, that plaintiff would have no cause of action for actual damages sustained, if any, unless she had informed the conductor of the train that she had been affected with tuberculosis. Nor do we think it necessary to plaintiff's right of recovery that the conductor "compelled the plaintiff to get off the train," if by the word "compelled" is to be understood as implying the use of irresistible force. In determining the liability of the appellant, where it is claimed the ejection from the train was either without cause or in an improper manner, an ejection might occur without the use of physical force, as where the passenger is informed that she must leave the train at a designated time and place. C. J. vol. 10, p. 752, par. 1190, and cases under note.

[7] Appellant insists that the verdict is excessive. There is nothing in the record to indicate passion, prejudice, or sinister motive. We cannot say the amount found by the jury is so excessive as to shock the moral sense or justify this court in setting aside the amount found by the jury, and the trial court in approving same, and substituting therefor an amount found by us.

Finding no reversible error, the case is affirmed.

## On Motion for Rehearing.

[8] In the motion for rehearing, our attention is called to the case of Harding v. Turner et al., 267 S. W. 314, by the San Antonio court. The case was not cited in appellant's brief. The court, in the case, holds that the husband, under the statute, is a necessary party, and a failure to dispose of him in the judgment rendered the judgment not final. In that case it was not disclosed in the pleading whether or not the note sued upon and assigned to the wife became her separate property. In that case it is stated by the court that appellant grounds his claim for the injunctive relief, in part, upon the contention that the interest of Conway, the husband, was not disposed of, nor was his interest adjudicated. In that case the court held that the husband, Conway, being a necessary party, the failure to dispose of him in the judgment rendered the judgment not final.

We have reviewed the cases referred to in that opinion and have concluded that the case, under the facts stated in the opinion, is distinguishable from the case at bar, and especially so under the holding of the court in the case of Whitmire et ux. v. Powell et al., 117 S. W. 433, in which Judge Talbot, for the Dallas court, on rehearing, said:

"It appears very clearly from the evidence that an undivided one-half interest in said land was acquired by A. F. Whitmire by gift from his father, P. C. Whitmire. Any interest Mrs. Whitmire may have had by reason of being A. F. Whitmire's wife was effectually disposed of by the judgment entered disposing of his interest, and was not less final because of its failure to dispose of her as a party to the suit by express mention of her name."

That case was before the Supreme Court, 125 S. W. 889, 103 Tex. 232, in which Judge Gaines said:

"It is assigned as error that the Court of Civil Appeals erred in holding that there was a final judgment in the case. The judgment did not mention Mrs. Whitmire, and is not a decree for her. The subject-matter of the controversy is adjudged to others, and she gets nothing. This is a judgment against her. Besides, it appears

from the evidence that she has no interest in the suit. Her husband's interest in the land is clearly his separate estate, and she has no interest in it."

In the suit at bar, the husband sued jointly with the wife for her separate property. The statute does not provide in whose name the judgment should be obtained. Article 4615, Revised Civil Statutes 1925, provides that all property or moneys received as compensation for personal injuries sustained by the wife shall be her separate property, except certain actual expenses mentioned, and not involved here.

We think, as said by the Supreme Court in the Whitmire-Powell Case, supra, that, where the subject-matter of the suit is adjudged to the wife, as here, the judgment is against the husband by necessary implication.

The motion is overruled.